**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**ROSELINE EGHAREVBA**,

*Petitioner*,

v.

**JASON BENZEL, *et al.***,

*Respondents*.

No. 26-cv-10628

**OPINION**

**APPEARANCES:**

**Alexandra Miron**
D'UVA & MIRON LLC
17 Academy Street, Suite 1101
Newark, NJ 07102

*On behalf of Petitioner.*

**John Francis Basiak**
**Frances C. Bajada**
**Jessica Laserna**
U.S. ATTORNEY'S OFFICE
402 E. State Street, Room 430
Trenton, NJ 08608

*On behalf of Respondents.*

**O'HEARN, District Judge.**

**THIS MATTER** comes before the Court on the Petition for Writ of Habeas Corpus. (ECF No. 1). The Court granted the Petition and ordered Petitioner released on September 2, 2026. (ECF No. 10). This Opinion further sets forth the reasons for the Court's decision.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner Roseline Egharevba is a native and citizen of Nigeria who has lived in the United States for much of the past three decades. She is presently subject to a final order of removal but has been granted withholding of removal to Nigeria. (Pet., ECF No. 1 ¶¶ 1, 13, 82). Before the detention at issue in this case, Petitioner had been living in New Jersey under an order of supervision and had reported periodically to Immigration and Customs Enforcement ("ICE") for more than seventeen years—as recently as March 2026—without incident. (*Id.* ¶¶ 68, 83; Pet. Ex. C, ECF No. 1-3 at 6–11). ICE scheduled her next reporting date for March 15, 2027. (Pet. Ex. D, ECF No. 1-3 at 12). ICE then suddenly arrested Petitioner on August 19, 2026, and she was detained at the Elizabeth Detention Center from that date until this Court ordered her release, a period of approximately fourteen days. (Pet., ECF No. 1 ¶¶ 1, 83).

According to Respondents, Petitioner first entered the United States on December 28, 1994, on a K-1 visa authorizing her to remain until March 27, 1995. (Gonzales Decl., ECF No. 9-1 ¶ 5). ICE apprehended her on April 18, 1996, for overstaying that visa and placed her in removal proceedings. (*Id.* ¶ 6). On September 17, 1996, an Immigration Judge ("IJ") granted Petitioner voluntary departure and directed her to leave the United States by March 17, 1997. (*Id.* ¶ 7; Gov't Ex. B, ECF No. 6-2 at 2). When Petitioner failed to depart by that date, ICE arrested Petitioner again on January 6, 2005, and removed her to Nigeria on February 2, 2005. (Gonzales Decl., ECF No. 9-1 ¶¶ 9–10). At some point thereafter, Petitioner reentered the United States without

inspection at an unknown date and location. (*Id.* ¶ 12). On April 8, 2009, ICE reinstated Petitioner's prior removal order pursuant to 8 U.S.C. § 1231(a)(5). (*Id.* ¶ 14; Gov't Ex. C, ECF No. 9-4 at 2). Shortly thereafter, Petitioner was released under an order of supervision requiring, among other things, periodic reporting to ICE and cooperation in obtaining any necessary travel documents. (Pet. Ex. C, ECF No. 1-3 at 6–11).

Respondents' records reflect that, by March 20, 2012, ICE was prepared to remove Petitioner to Nigeria. (Gonzales Decl., ECF No. 9-1 ¶ 15). Petitioner expressed a fear of returning there, however, and ICE referred her to the Newark Asylum Office for a reasonable-fear interview. (*Id.*). Her ensuing withholding-only proceedings continued for several years, including delays associated with the COVID-19 pandemic. (*Id.* ¶¶ 16–17). On March 8, 2022, following a merits hearing, an IJ granted Petitioner withholding of removal to Nigeria. (*Id.* ¶ 18; Gov't Ex. C, ECF No. 6-3 at 2). Respondents have apparently made no efforts to remove her to another country since that time.

On August 19, 2026, ICE arrested Petitioner in New Jersey and again issued a notice purporting to reinstate her 1997 removal order. (Gonzales Decl., ECF No. 9-1 ¶ 19; Gov't Ex. D, ECF No. 6-4 at 2). Petitioner filed this Petition for Writ of Habeas Corpus the following day. (ECF No. 1). Among other things, she contends that her continued detention is unlawful because her removal is not reasonably foreseeable and because ICE revoked her longstanding release without complying with the procedures governing revocation of an order of supervision. (Pet., ECF No. 1 ¶¶ 64–79, 99–104). She also challenges any attempt to remove her to an unidentified third country without additional procedural protections.[1] (*Id.* ¶¶ 84–98).

[1] Because, as explained below, the Court finds that her detention under 8 U.S.C. § 1231 is unlawful, the Court does not address Petitioner's challenge to third-country removal at this time.

Respondents initially appeared to take the position that the August 2026 reinstatement of Petitioner's removal order rendered her newly subject to detention under § 1231 and that, because she had been detained for only several days, any challenge under *Zadvydas v. Davis*, 533 U.S. 678 (2001), was premature. (Gov't Resp., ECF No. 6 at 1–2). Following the Court's request for additional information concerning Petitioner's immigration history and the basis for her detention, however, Respondents filed a supplemental submission clarifying that ICE had already reinstated Petitioner's removal order in April 2009. (Gov't Supp. Resp., ECF No. 9 at 1). Respondents now expressly disclaim any argument that the August 2026 reinstatement restarted the ninety-day removal period and instead contend that the April 2009 reinstatement is controlling and that Petitioner's removal period began at that time. (*Id.*). They further acknowledge that Petitioner's later withholding-only proceedings did not alter the finality of that reinstated removal order. (*Id.* (citing *Riley v. Bondi*, 606 U.S. 259, 269 (2025))). Nevertheless, Respondents maintain that her detention is presumptively reasonable under *Zadvydas* because she has not yet been detained for six months.

As to the foreseeability of removal, Respondents represent that ICE intends to remove Petitioner to a third country because her withholding grant prevents removal to Nigeria. (Gonzales Decl., ECF No. 9-1 ¶ 20). But Respondents have not identified any such country, any travel authorization or receiving-country approval (or even any requests to any country), any scheduled transportation, or any other concrete step toward effectuating a third-country removal. The ICE declaration upon which Respondents rely states only that, if the Court vacates its injunction against transferring Petitioner outside New Jersey, ICE "will remove Petitioner from the United States to a third country" and that her removal is "likely to occur in the reasonably foreseeable future." (*Id.* ¶¶ 20–21). Respondents themselves acknowledge that ICE "was unable to provide any specific

information bearing on the foreseeability of removal" for purposes of their supplemental filing. (Gov't Supp. Resp., ECF No. 9 at 2).

## II. JURISDICTION AND LEGAL STANDARD

District courts have jurisdiction under 28 U.S.C. § 2241 to hear claims that an immigration detainee is "in custody in violation of the Constitution or laws or treaties of the United States." § 2241(c)(3); *see also Zadvydas*, 533 U.S. at 687; *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 439 (3d Cir. 2021); *Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 440 (D.N.J. 2019). Petitioners have the burden to demonstrate that their detention violates the Constitution or federal law. *See, e.g.*, § 2241(c)(3); *Zumba v. Bondi*, No. 25-14626, 2025 WL 2753496, at *4 (D.N.J. Sept. 26, 2025); *Sarkisov v. Underwood*, No. 24-88, 2025 WL 1640826, at *1 (W.D. Pa. May 5, 2025). "The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

Though Respondents do not assert that this Court lacks jurisdiction, the Court has an independent obligation to ensure that subject matter jurisdiction exists. *E.g., Great W. Mining & Min. Co. v. Fox Rothschild LLP,* 615 F.3d 159, 163 (3d Cir. 2010). As Petitioner was detained in New Jersey at the time she filed her Petition and challenges the legality of that detention on federal constitutional and statutory grounds, this Court has jurisdiction to consider her claims. Finally, no statute divests this Court of jurisdiction because Petitioner does "not seek review of the Attorney General's exercise of discretion; rather, [she] challenge[s] the extent of the Attorney General's

authority under the post-removal-period detention statute."[2] *Zadvydas*, 533 U.S. at 688.

## III. DISCUSSION

Civil immigration detention is a means to an end. It is not an end in itself. When the Government promptly detains a noncitizen after securing a final order of removal to effectuate removal from the United States, that detention is initially mandatory and presumptively reasonable for six months. But when the Government releases a noncitizen on supervised release and then idly sits by, allowing that person to work and build ties to the community in the meantime, that presumption no longer exists. In such circumstances, it is the Government that must point to some evidence that removal is likely to occur in the reasonably foreseeable future to justify detention. Respondents have not done so here. Their bare assertion that Petitioner will be removed does not establish a significant likelihood of removal in the reasonably foreseeable future, and it cannot justify continued detention.

### A. Statutory and Regulatory Framework

Once a noncitizen is ordered removed, the Department of Homeland Security ("DHS") must remove them within ninety days. § 1231(a)(1)(A). This "removal period" begins on the latest of: "(1) the date the order of removal becomes 'administratively final,' (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from

[2] This case is distinguishable from one in which a noncitizen "challenges the Government's re-detaining him for prompt removal." *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 298–99 (3d Cir. 2020). In *Tazu*, the Government re-detained the petitioner three days after obtaining his new passport and, absent judicial intervention, would have removed him approximately three-and-a-half weeks later. *Id.* The Third Circuit held that a habeas challenge to this "brief door-to-plane detention" necessarily attacked the Government's decision to execute the removal order and was therefore barred by 8 U.S.C. § 1252. *Id.* Here, as explained below, Respondents have offered no evidence that they possess travel documents and that Petitioner's removal is similarly imminent. Section 1252 therefore does not divest this Court of jurisdiction to review the legality of Petitioner's detention.

non-immigration detention or confinement." *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (quoting § 1231(a)(1)(B)). Here, Respondents now concede that Petitioner's reinstated removal order was administratively final on April 8, 2009, and the removal period began on that date. (Gov't Supp. Resp., ECF No. 9 at 1).

Detention during the ninety-day removal period is mandatory. § 1231(a)(2). Once the removal period concludes, the Government may release the noncitizen under an order of supervision or continue to detain certain noncitizens.[3] § 1231(a)(6). Although the statute does not limit the length of post-removal-period detention, the Supreme Court, recognizing the serious constitutional concerns with indefinite detention, has construed the statute as authorizing detention only for the period reasonably necessary to effectuate removal. *Zadvydas*, 533 U.S. at 701. In other words, "the Court interpreted the statute to permit only detention that is related to the statute's 'basic purpose [of] effectuating an alien's removal,'" *Clark v. Martinez*, 543 U.S. 371, 377 (2005) (alteration in original) (quoting *Zadvydas*, 533 U.S. at 696–99). To "guide" the lower courts in their duty to "ask whether the detention in question exceeds a period reasonably necessary to secure removal" based on the "particular circumstances" of the case, the Court identified six months as a presumptively reasonable period of detention. *Zadvydas*, 533 U.S. at 699, 701. Although not expressly stated in *Zadvydas*, the six-month period is comprised of the ninety-day removal period plus ninety days thereafter. *E.g.*, *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). In other words, detention is mandatory for ninety days and presumptively reasonable for another ninety days. After that period, if the detainee provides "good reason to believe that

[3] The removal period, and thus mandatory detention, can be extended if the alien refuses to apply for travel documents or otherwise conspires or acts to prevent their removal. § 1231(a)(1)(C). Respondents have not argued here that the removal period was extended under this provision. Thus, the removal period ended in July 2009.

there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the Government to rebut that showing with sufficient evidence. *Zadvydas*, 533 U.S. at 701.

DHS regulations provide two avenues for supervised release following the removal period. Under 8 C.F.R. § 241.4(e), ICE may release a noncitizen following the removal period after concluding that travel documents are unavailable or that immediate removal is otherwise impracticable or not in the public interest. ICE must further conclude that the person does not pose a danger to the community or a significant flight risk. *See id.* By contrast, 8 C.F.R. § 241.13 establishes a separate *Zadvydas*-based procedure under which a noncitizen may be released upon a determination that there is no significant likelihood of removal in the reasonably foreseeable future.

The distinction is material because the regulations impose different standards for revocation depending on the basis for release. Under 8 C.F.R. § 241.4(l), ICE may revoke release if, among other things, the noncitizen violates a condition of release, circumstances indicate release is no longer appropriate, or it is appropriate to enforce the removal order. By contrast, where release was granted under 8 C.F.R. § 241.13 based on a determination that removal was not significantly likely in the reasonably foreseeable future, ICE may re-detain the noncitizen, absent a supervision violation, only upon changed circumstances supporting a new determination that removal has become significantly likely in the reasonably foreseeable future.

Here, Petitioner has attached her order of supervision to the Petition which is undisputedly authentic. (ECF No. 1-3 at 6–11). Thus, after nearly seventeen years of having been on supervised release without incident, Respondents necessarily revoked her order of supervision when they took her into custody. Petitioner alleges that this revocation was governed by 8 C.F.R. § 241.4. (Pet., ECF No. 1 ¶¶ 64–68). Respondents simply ignore and fail to address the factual or legal issues

related to revocation of Petitioner's supervised release.

**B. The *Zadvydas* Presumption Does Not Apply**

As this Court has previously explained, *Zadvydas* contemplated a continuous period of detention from the beginning of the removal period and does not squarely address what framework should apply in a case like this where a noncitizen has been previously released on supervision and then suddenly re-detained many years later. *Santamaria-Mejia v. ICE*, No. 26-07437, 2026 WL 2018107, at *3 (D.N.J. July 13, 2026). Respondents argue that the Petition should be denied because "Petitioner has not shown that her total detention time has exceeded the presumptively reasonable period of six months." (ECF No. 9 at 2). In other words, Respondents assert that they are entitled to a presumption of reasonableness whenever they seek to detain a noncitizen pursuant to a final removal order, even if that is years or even decades after the removal period has ended, so long as the total detention does not exceed six months.

As this Court previously noted, however, a growing number of courts have either rejected or at least questioned Respondents' argument that the *Zadvydas* presumption should apply when the detention is so far removed from the statutory removal period. *Santamaria-Mejia*, 2026 WL 2018107, at *3 (collecting cases). Although the Court did not need to decide the issue in that case, it recognized that "there is at least substantial doubt as to whether *Zadvydas*'s six-month presumption applies in cases such as this where the ninety-day mandatory detention period has long expired and there has been no prior detention." *Id.* at *4.

The Court is now directly presented with this question and joins the growing number of courts around the country in holding that the *Zadvydas* six-month presumption is inapplicable in cases such as this involving detention long after the entry of a final removal order and following years of supervised release. *See, e.g.*, *Khoury v. Garite*, ___ F. Supp. 3d ___, No. 25-00577, 2026

WL 1179822 (W.D. Tex. Apr. 21, 2026); *Castro-Napoles v. Noem*, No. 26-03212, 2026 WL 1720963 (S.D. Cal. June 15, 2026); *Nguyen v. Mullin*, No. 26-2815, 2026 WL 1480803 (S.D. Cal. May 26, 2026); *Yan-Ling X. v. Lyons*, 813 F. Supp. 3d 1157 (E.D. Cal. 2025). As the Court observed in *Santamaria-Mejia*, it makes little sense to take a presumption that was intended to give the Government time to effectuate removal in the months following a final removal order and apply it years if not decades later when the Government has had ample opportunity to try and remove a noncitizen. 2026 WL 2018107, at *3–4.

Thus, many courts have held that when the Government revokes an order of supervised release under § 241.13, it is the *Government* that bears the burden of showing that there have been changed circumstances indicating there is a *significant* likelihood that the alien may be removed in the reasonably foreseeable future. *See, e.g.*, *Zhang v. Sage*, No. 26-01193, 2026 WL 2227309 (M.D. Pa. Aug. 3, 2026); *Nguyen v. Hyde*, 788 F. Supp. 3d 144 (D. Mass. 2025); *Hall v. Nessinger*, No. 25-667, 2026 WL 18583 (D.R.I. Jan. 2, 2026). Courts have also placed the burden on the Government where, as here, the initial release on supervision was apparently pursuant to § 241.4. *See Yan-Ling X.*, 813 F. Supp. 3d at 1162–64. The Court holds that the burden should fall upon the Government in either scenario. [4]

[4] Placing the burden on the Government even when release occurred under § 241.4 is logical. ICE could not have released Petitioner under that regulation without first concluding that she was not a threat to the community or a significant flight risk—the very interests the Government invoked to justify detention in *Zadvydas*. 8 C.F.R. § 241.4(e); 533 U.S. at 690–91. Furthermore, ICE would have had to determine that travel documents are not available or that "immediate removal, while proper, is otherwise not practicable or not in the public interest." § 241.4(e). Once ICE has made those findings, re-detention years later, absent a violation of supervision, must therefore be similarly justified on changed circumstances related to § 1231(a)(6)'s removal-based purpose. *See Zadvydas*, 533 U.S. at 699 (emphasizing that courts should "measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal").

The Court recognizes, however, that other courts have applied the post-six-month burden-shifting framework set forth in *Zadvydas,* under which the noncitizen must first provide "good reason" that there is not a significant likelihood of removal in the reasonably foreseeable future before the burden shifts to the Government. *Khoury*, 2026 WL 1179822, at *9; *Castro-Napoles*, 2026 WL 1720963, at *3. As a practical matter, there is little difference between applying *Zadvydas*'s burden-shifting framework and placing the burden on the Government from the outset in cases such as this. Where, as here, the Government has taken no meaningful steps for years to effectuate removal, a noncitizen will have little difficulty providing "good reason to believe that there is no *significant* likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701 (emphasis added). *Zadvydas* does not require a noncitizen to prove a negative, i.e., that no conceivable avenue to removal exists. Furthermore, only the Government possesses the information most relevant to the foreseeability of removal, such as its communications with potential receiving countries and ability to arrange transportation. Thus, regardless of which framework applies, once the record supplies a reasonable basis to doubt that there is a significant likelihood of removal in the reasonably foreseeable future, the Government must come forward with some evidence to rebut that showing. As the Court previously explained, when the Government leaves a removal order unenforced for years while a noncitizen builds a life, family, and community ties in the United States, "allocating the burden in this manner is consistent with the rationale of *Zadvydas* and the underlying principles of due process." *Santamaria-Mejia*, 2026 WL 2018107, at *4.

To be sure, this is not a "Get Out of Jail Free Card," *Khoury*, 2026 WL 1179822, at *8, for all noncitizens like Petitioner. It means only that when the Government revokes an order of supervised release and seeks to suddenly detain a noncitizen after years of inaction on the premise

that it now intends to remove them, the Government must put forward some evidence establishing a significant likelihood of removal to justify detention. As explained below, Respondents have failed to do so.

**C. The Government Has Failed to Establish a Significant Likelihood of Removal in the Reasonably Foreseeable Future**

Respondents have identified no effort to remove Petitioner to any third country since she was granted withholding of removal to Nigeria in 2022. Indeed, Petitioner remained at liberty under an order of supervision throughout that period and continued reporting to ICE without incident, including as recently as March 2026—during the current administration—when ICE permitted her to leave and scheduled her next reporting date for March 2027. (Pet., ECF No. 1 ¶ 68; ECF No. 1-3 at 12). Nothing in the record suggests that, at that time, ICE had identified a third country willing to accept Petitioner or had begun taking concrete steps toward her removal. This lengthy history of Government inaction, including in the months preceding her arrest, is more than sufficient to provide good reason to doubt that removal suddenly became significantly likely.

Even Respondents' own declaration stops short of the standard *Zadvydas* requires. ICE states only that Petitioner's removal is "likely to occur in the reasonably foreseeable future." (Gonzales Decl., ECF No. 9-1 ¶ 21). *Zadvydas*, however, requires a *significant* likelihood of removal. 533 U.S. at 701. Moreover, Respondents offer no facts beyond this bare assertion. They identify no third country to which they will allegedly seek to remove Petitioner; no requests or agreements to accept her; no requests for, or issuance of, travel documents; or any other concrete steps toward removal. Respondents cannot establish a significant likelihood of removal in the reasonably foreseeable future based solely on their say-so. "The constitutional due process protections of the Fifth Amendment require more than such speculative, conclusory statements." *Zhang*, 2026 WL 2227309, at *5.

In short, the Government has not shown a significant likelihood that Petitioner will be removed in the reasonably foreseeable future, and her continued detention cannot be justified.[5]

*****

## IV. CONCLUSION

In sum, while the Government may detain a noncitizen to effectuate removal under § 1231, detention must be tied to that purpose. When the Government suddenly revokes supervision and detains a noncitizen after leaving a removal order unenforced for years, detention is no longer presumptively reasonable. Rather, the Government bears the burden of proof and must put forward some evidence establishing a significant likelihood of removal in the reasonably foreseeable future beyond its own *ipse dixit*. Here, the Government has offered only its bare assertion that removal is likely. That is plainly insufficient. Accordingly, Petitioner's continued detention is no longer authorized by § 1231(a)(6) and the Petition must be granted on that basis.

**CHRISTINE P. O'HEARN**
**United States District Judge**

DATED: September 9, 2026

[5] As explained above, regardless of whether the burden rests with the Government at the outset or whether the ordinary *Zadvydas* burden-shifting framework applies, Petitioner's continued detention is unreasonable and not authorized by § 1231(a)(6). Even under *Zadvydas*, Petitioner need only provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. Thus, even if such a modest initial burden applies to Petitioner, she has met that burden here and the outcome is the same.